IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIA RODRIGUEZ, as natural parent and
next friend of Eva Rodriguez, a minor child; and
JACOB LARRAGOITE, individually and on behalf
of all similarly situated individuals,

           Plaintiffs,

  vs.                                                         No. CIV 98-1545 JC/LFG

HEITMAN PROPERTIES OF NEW MEXICO,
LTD., d/b/a Coronado Center; CITY OF
ALBUQUERQUE, a Municipal Corporation and
political subdivision of the State of New Mexico;
and STT, Inc., a Michigan corporation,

           Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION
TO STAY PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

      This matter comes before the Court on Defendants' joint Motion to Stay Plaintiffs' Motion for Preliminary Injunction or, Alternatively, to Compel Production of Data Underlying Affidavits Supporting Preliminary Injunction Motion and to Set Discovery and Briefing Schedules on the Motion [Doc. 64], filed on September 30, 1999. This matter has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). The Court, having considered the briefs and attachments thereto and being fully advised in the premises, finds that Defendants' Motion to Stay is well-taken and will be granted.

**Facts and Procedural History**

      Defendants ask the Court to stay all proceedings on Plaintiffs' Motion for a Preliminary

Injunction in this civil rights class action suit. Preliminary injunction motions normally require speedy action on the part of the Court; in this case, however, the Court finds no immediately pressing need for a determination on the issue of injunctive relief. The parties may revisit the issue, if necessary, after class certification issues have been resolved and discovery begins on issues going to the merits.

Plaintiffs Eva Rodriguez, a minor, through her mother and next friend, and Jacob Larragoite bring this class action under 42 U.S.C. §§ 1981, 1983, 1985 and 1988, alleging civil rights violations by Heitman Properties, the owners of Coronado Center, a regional shopping mall located in Albuquerque, New Mexico; STT, Inc., the security firm responsible for maintaining order within the mall; and the City of Albuquerque, based on the actions of members of the Albuquerque Police Department ("APD").

Plaintiffs sue on behalf of themselves and other similarly situated persons, a class consisting of all Hispanic individuals under twenty-one years old who were unlawfully arrested or otherwise detained and photographed and/or otherwise required by defendants to identify themselves, even though they were never charged with having committed any crime. The original complaint was filed on December 21, 1998. It has been amended twice since that time, the most recent change being the termination of one of the original plaintiffs and addition of Jacob Larragoite as a named plaintiff and representative of the putative class (Second Amended Complaint, "SAC", Doc. 51). The class period runs from December 21, 1996 until the date on which the District Court rules on certification. (SAC, ¶ 3).

Plaintiffs base their action on conspiracy to deprive and deprivation of their liberty interests under the Fourteenth Amendment, their right against unlawful searches and seizures under the Fourth Amendment, and their right to full and equal benefit of all laws and entitlement to full and equal

enjoyment of public accommodations regardless of their race. They also bring pendent state claims for assault, battery, false arrest, and false imprisonment. Plaintiffs seek damages and injunctive and declaratory relief, as well as attorneys' fees.

Plaintiff Eva Rodriguez alleges that in May 1998, when she was 15 years old, she and her friends were detained by Defendants for violating a Coronado Center rule against minors congregating in groups of three or more at the mall. She states that mall security officers pulled her and her friends by the arms and forced them into a hallway where, with "back up" help from APD officers, they searched her, instructed her to empty her pockets, photographed her, and took down her name and address. She was escorted to the exit by mall security officers and APD officers and told that she was banned from returning to the mall for an indefinite period. She believes that her name, address, and photograph were given by mall security officers to APD and retained in the records of Coronado Center, APD and/or STT. All of this was done, Eva alleges, without parental consent and without any suspicion that she or her friends had committed any crime. (SAC, ¶¶ 11, 18-27).

Jacob Larragoite alleges that on April 19, 1999, when he was 19 years old, he was ejected from Coronado Center following a verbal argument between his friend and another young male visitor to the mall. He states that, although he was not involved in the argument, he left the mall voluntarily when asked to do so. He returned to the entrance a few minutes later, with the permission of a mall security officer, at which point he and his friend were detained by a different officer. Jacob alleges that he and his friend were handcuffed, escorted through the mall in full view of other patrons and forced to identify themselves. They were served with criminal trespass notices signed by an APD officer, instructing them that they were permanently banned from returning to the mall. Despite

3

Jacob's objection, a mall security officer took his photograph as he was leaving. He believes that his name, address, and photograph were given by mall security officers to APD and retained in the records of Coronado Center, APD and/or STT. All of this was done, Jacob alleges, without any suspicion that he or his friend had committed any crime. (SAC, ¶¶ 12, 28-40).

In its Initial Scheduling Order filed April 30, 1999 in this case, the Court ruled that discovery would be limited to issues pertaining to class certification under F. R. Civ. P. 23(a), with discovery on issues going to the merits delayed until after the Court rules on class certification. Plaintiffs objected to this phased discovery. (Report Regarding Provisional Discovery Plan, ¶ 1, filed April 14, 1999). Plaintiffs have not yet filed a motion for class certification, and the Court has made no ruling on this issue. However, on September 13, 1999, Plaintiffs filed a pre-certification Motion for Preliminary Injunction [Doc. 59] with attached affidavits, asking that the Court order Defendants to refrain from unlawfully arresting, detaining, banishing, coercively identifying, photographing, handcuffing, assaulting, or otherwise molesting Plaintiffs and members of the class Plaintiffs seek to represent. Defendants did not file a response to this motion but instead filed a "Motion to Stay Plaintiff's Motion for Preliminary Injunction or, Alternatively, to Compel Production of Data Underlying Affidavits Supporting Preliminary Injunction Motion and to Set Discovery and Briefing Schedules on the Motion, and Defendant's Request for Expedited Hearing."

**Analysis**

The Court does not, at this time, rule on Plaintiffs' Motion for Preliminary Injunction. However, in resolving Defendants' Motion to Stay, consideration must be given to the standards for issuing a preliminary injunction. The primary purpose of a preliminary injunction is to preserve the status quo pending the outcome of the case. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980).

4

In issuing a preliminary injunction, a court is attempting to preserve the power to render a meaningful final decision on the merits. Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986). If it appears that "Plaintiffs did not seek to maintain the status quo pending a determination on the merits, but sought to use the preliminary injunction as a vehicle to effect the remedies sought in the complaint," a motion for preliminary injunction should be denied. Broadnax v. U.S. Parole Comm'n, 116 F.3d 489 (Table), text in Westlaw, 1997 WL 346042, at *1 (10th Cir. June 24, 1997).

To be entitled to a preliminary injunction, the moving party must demonstrate that: (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992).

In their Motion for Preliminary Injunction, Plaintiffs contend that a preliminary injunction is necessary because they will suffer irreparable harm if Defendants are not immediately enjoined from their unlawful conduct in detaining and otherwise harassing, without probable cause, Plaintiffs and other members of the putative class of young Hispanic visitors to Coronado Center. Plaintiffs state that they wish to return to Coronado Center to engage in transactions at stores they formerly patronized, but they are reluctant to do so for fear of arrest, detention, and further mistreatment and humiliation by Defendants. Plaintiffs allege further that they will likely prevail on the merits of their complaint; that the harm to Plaintiffs outweighs any possible harm to Defendants, who are only being

ordered to comply with the law; and that the public interest would be served by enforcement of the constitution and laws of the United States.

Defendants argue that Plaintiffs could have filed their Motion for Preliminary Injunction in December 1998, at the time they first filed their Complaint in this matter, pointing out that the incidents complained of in the initial Complaint are alleged to have occurred in February, May, and June, 1998. Plaintiffs explain the delay by stating that it was only at the Initial Conference on April 19, 1999 that they became aware that Defendants would not voluntarily change their policies in response to this litigation. At that time, Plaintiffs already had the testimony of the two named Plaintiffs, as well as the affidavit of Carmen Cornejo, a former security guard at Coronado Center which eventually was used to support their Motion for Preliminary Injunction. They acknowledge that they could have filed a motion for preliminary injunctive relief at that point; however:

> [b]ecause of the seriousness of the allegations, and out of caution . . . plaintiffs elected to determine, through discovery, the degree to which Heitman's/STT's records confirmed what plaintiffs' informal investigation suggested, confirmed the accuracy of the Cornejo affidavit, and confirmed the typicality of the named plaintiffs' experiences at Coronado Center.

(Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, at 11).

Plaintiffs state further that it was not until July 26, 1999 that they were given copies of STT's contact records which STT had identified in its initial disclosures on April 29, 1999, and that it took counsel's paralegal until September 12, 1999 to enter the information from these reports into a database and to analyze the results. (Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, at 6). They filed their Motion for Preliminary Injunction the next day, on September 13, 1999.

6

In their Motion to Stay, Defendants contend that Plaintiffs' Motion for Preliminary Injunction is an attempt to circumvent the Court's April order regarding phased discovery, as resolution of the Motion necessarily involves consideration of the merits of the case, and the Court has disallowed discovery on the merits until the class certification issues have been resolved. Therefore, Defendants seek alternative relief; either: (1) that the Court stay proceedings on the Motion for Preliminary Injunction until after the Court resolves the class certification issues and discovery on the merits has progressed sufficiently to allow Defendants to address the factual and legal issues arising from Plaintiff's Motion for Preliminary Injunction; or (2) if the Court does not order a stay, that it extend the time for Defendants to respond to Plaintiffs' motion until after Defendants have an adequate opportunity to examine the documents underlying Plaintiffs' statistical analysis, to depose the four persons whose affidavits support the Motion for Preliminary Injunction, and to obtain rebuttal evidence.

In resisting Defendants' Motion to Stay, Plaintiffs' greatest hurdle is to convince the Court that immediate injunctive relief is necessary in spite of the fact that they waited almost nine months after the lawsuit was initiated before requesting such relief. As of the Initial Scheduling Order of April 30, 1999, the parties were aware that discovery would initially be limited to the issues of class certification (that is, commonality, numerosity, typicality, adequacy of representation, and standing). Any discovery on issues going to the merits (that is, whether Defendants violated and conspired to violate Plaintiffs' constitutional rights and what damages, if any, were suffered) has been exchanged between the parties only incidentally, in connection with class-certification discovery. Since, in the interests of efficient management of the litigation, neither party has had an opportunity to proceed full-bore with discovery on the merits, injunctive relief would be inappropriate at this time and

7

Defendants' motion to stay should be granted, unless Plaintiffs demonstrate that a preliminary injunction is immediately necessary to prevent irreparable harm.

In resolving Defendants' rather unusual Motion to Stay, it makes sense for this Court to ask whether Plaintiffs are likely to prevail on their Motion for Preliminary Injunction, in much the same way that the Court makes a determination of the likelihood that a plaintiff will prevail on the merits in resolving a motion for preliminary injunction. From the showing made thus far, in Plaintiffs' Motion for Preliminary Injunction, in their Response to Defendants' Motion to Stay, and in their Surreply on Defendants' Motion, the Court finds that Plaintiffs have not demonstrated that they would be likely to succeed in obtaining preliminary relief, because their showing thus far does not indicate that they will suffer irreparable injury if the Court does not issue an immediate injunction against Defendants' conduct.

Plaintiffs assert that "[t]he loss of constitutional guarantees constitutes irreparable harm," citing Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976). Memorandum in Support of Motion for Preliminary Injunction, at 12. Elrod actually holds that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, the Court noting that "the timeliness of political speech is particularly important." Id., at 374 n.29. The Tenth Circuit has emphasized the free speech issue, in citing Elrod for the principle that "to the extent that First Amendment rights are infringed, irreparable injury is presumed." Community Communications Co. v. City of Boulder, 660 F.2d 1370, 1376 (10th Cir. 1981). Elrod does not stand for the proposition that irreparable injury will be presumed whenever a constitutional injury of any sort is alleged.

Certainly there may be cases where Fourth Amendment violations give rise to findings of

8

irreparable injury; however, this is not such a case. Defendants dispute that Plaintiffs have suffered irreparable harm or will do so in the immediate future, and they characterize Plaintiffs' injury as mere "economic loss," in that it entails only their "inability to shop at Coronado Center." (Defendants' Reply on their Motion to Stay, at 5). This rather cavalier description does not accurately characterize the alleged damage for which Plaintiffs seek redress: racially-based violation of their right against unreasonable searches and seizures without probable cause, and retention of unlawfully obtained arrest records. The Court does not take such allegations lightly; however, neither does it find in the record evidence that Plaintiffs will be irreparably harmed if their request for injunctive relief is put off until discovery has proceeded further on the merits of their claims.

As Defendants point out, Plaintiffs have waited several months to seek a preliminary injunction, delay which indicates a less-than-urgent need for injunctive relief. GTE Corp. v. Williams, 731 F.2d 676, 678-79 (10th Cir. 1984). See also, Kingsford Products Co. v. Kingsfords, Inc., 674 F. Supp. 1428, 1431 (D. Kan. 1987): "The plaintiff has waited nearly 8 months before seeking any relief. Delay of this nature undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests there is, in fact, no irreparable injury."

Plaintiffs argue, in essence, that there is a presumption that the loss of constitutional guarantees constitutes irreparable harm. They have not specified how they will be harmed, in any way which cannot be rectified at the end of the litigation with compensatory damages and a permanent injunction. The Tenth Circuit has held in a trademark infringement case, that although infringement is usually presumed to constitute irreparable harm without any further showing, nevertheless, delay in seeking relief "undercuts any presumption that infringement alone has caused irreparable harm pendent lite; therefore, such delay may justify denial of a preliminary injunction for trademark

9

infringement." GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir. 1984). Plaintiffs have explained the reasons for their delay; however, the fact of the delay weakens substantially their argument that speedy action is necessary to vindicate their rights:

> By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues.

GTE Corp. v. Williams, at 679.

As for the other elements necessary for issuance of a preliminary injunction, the record at this point does not indicate that immediate harm to Plaintiffs' interests outweighs Defendants' need to control rowdy and disorderly conduct at Coronado Center, nor that the public interest would be served by an injunction making such control more difficult. Having found no irreparable harm, the Court does not address the issue of whether Plaintiffs are likely to prevail on the merits.

Since there is not an immediate need for injunctive relief to avert irreparable harm, the litigation will be more efficiently handled by staying proceedings on Plaintiff's motion until after the class certification issue is settled and the parties have at least begun, through the second phase of discovery, to develop evidence going to the merits of Plaintiffs' claims. This would presumably include the "merits" discovery requested by Defendants in their Motion to Stay, including deposing the persons whose affidavits were filed in support of Plaintiffs' Motion for Preliminary Injunction. The Court does not by this ruling imply that preliminary injunctive relief is never available in a class action suit prior to certification of the class, only that Plaintiffs in this particular class action suit have not convinced the Court that a stay of their motion for preliminary injunction would impede the Court's power to render a meaningful final decision on the merits.

IT IS THEREFORE ORDERED that Defendants' joint Motion to Stay Plaintiffs' Motion for Preliminary Injunction [Doc. 64] is granted. The portion of Defendants' Motion asking the Court to compel production of data underlying the affidavits, and setting discovery and briefing schedules on the motion for preliminary injunction, is denied as moot. All proceedings on Plaintiffs' request for a preliminary injunction are hereby stayed. The parties will proceed with discovery limited to class certification issues, as previously ordered by the Court. Unless new circumstances arise, Plaintiffs may not renew or refile their motion for preliminary injunction until after the Court rules on the class certification issue, and at least forty-five days have elapsed after the Court orders that the parties may begin discovery on the merits.

                                            _____
                                            Lorenzo F. Garcia
                                            United States Magistrate Judge

ATTORNEYS FOR PLAINTIFF:
John W. Boyd, Esq.
Scott M. Davidson, Esq.
Eric J. Knapp, Esq.
Kathryn A. Hammel, Esq.

ATTORNEYS FOR DEFT. HEITMAN:
John R. Cooney, Esq.
Christopher Muirhead, Esq.
Don H. Reuben, Esq.
Keith F. Bode, Esq.
Jane B. McCullough, Esq.
John F. Gibbons, Esq.

ATTORNEYS FOR DEFT. CITY OF ALBUQ:
Bruce T. Thompson, Esq.
Kathryn Levy, Esq.

ATTORNEY FOR DEFT. STT, INC.:
Alfred L. Green, Jr., Esq.