IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JACOB LARRAGOITE,

    Plaintiff,

v.             No. CIV 98-1545 BB/LFG

HEITMAN PROPERTIES OF NEW MEXICO, LTD., d/b/a CORONADO CENTER; STT, INC.; and CITY OF ALBUQUERQUE, a Municipal Corporation and political subdivision of the State of New Mexico, and STT, Inc., a Michigan corporation,

    Defendants.

## MEMORANDUM OPINION AND ORDER

   THIS MATTER comes before the Court for consideration of Plaintiff's motion for partial summary judgment (Doc. 254). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motion for partial summary judgment will be granted.

   "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty*

*Lobby, Inc*., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider the motion for partial summary judgment in light of this standard.

**Procedural Posture of Case:** As the parties are aware, the private defendants have been dismissed from the case following a settlement. The only claim left to be determined is Plaintiff's request for a permanent injunction, enjoining the City of Albuquerque ("City") from enforcing its Criminal Trespass ("CT") Notice procedure in an unconstitutional manner at the Coronado Mall in Albuquerque ("Mall"). The motion for partial summary judgment currently at issue concerns only the legality of one detention of Plaintiff at the Mall. Therefore, the Court need not at this time determine questions relevant to the injunction issue, such as the existence of a CT Notice policy, the nature of that policy, and the manner in which it is administered in general at the Mall by Albuquerque police officers ("APD").

**Facts:** Viewed in the light most favorable to the City, a brief summary of the facts presented to the Court follows.[1] Plaintiff and his friends were at the Mall when a verbal altercation occurred between Plaintiff's group and at least one other customer. Plaintiff and his friends were asked to leave the Mall, by a private security guard. After they were escorted out of the Mall by a guard, one of Plaintiff's friends saw two young women walking toward the Mall, and asked if he and Plaintiff could go speak to the women. One security guard agreed. Plaintiff and his friend, rather than staying outside the Mall, began to re-enter it in order to talk to the women; they were confronted by a

---

[1]The crucial facts are derived mainly from the deposition of Marc Thompson, the security guard who was mainly involved in the detention of Plaintiff and the issuance of the CT notice to him. *See* Plaintiff's Exh. G. Other background facts are based on the parties' recitation of the undisputed facts of the case.

different security guard, Mr. Thompson, who told them to leave. Plaintiff "mouthed off" to Thompson as he and his friend were leaving, and attempted (but failed) to give Thompson a "shoulder shove" as he walked by. Due to Thompson's perception that Plaintiff was being antagonistic, Thompson decided to give Plaintiff a CT notice, notifying Plaintiff that he was no longer welcome at the Mall and would be committing the crime of criminal trespass if he returned to the Mall in the future.

Plaintiff refused to identify himself or provide any type of identification to Thompson. Therefore, Thompson was unable to complete the CT notice at the scene of the incident. He called APD, at the Coronado Mall Substation, for assistance. Thompson explained the situation to an unidentified APD officer, who told him to escort Plaintiff and his friend to the Substation and "We'll help you guys out with it." Thompson, who thought there might be trouble because of the hostile situation, decided to handcuff Plaintiff and his friend, and then took them the length of the Mall to the Substation. Once they were at the substation, Thompson again explained to the APD officer that he wanted to fill out CT notices, but Plaintiff and his friend would not provide any I.D. The officer "took over from there and said like--you know, got their information." Thompson then filled out the CT notice form. During this time, Plaintiff and his friend remained handcuffed; according to Thompson, once they reached the Substation the decision to keep the handcuffs on was out of his hands, and was the decision of the APD officer.[2] Once the CT notices were completed, Plaintiff and his friend were allowed to leave the Mall.

**Discussion:** As Plaintiff contends, a police officer may detain an individual against the individual's will only if there is reasonable suspicion that the individual has committed a crime,

---

[2]The City submitted no evidence in opposition to the motion for partial summary judgment, so there is no evidence contradicting any of the factual assertions made by Thompson.

justifying an investigative detention, or if there is probable cause to arrest the individual. *See Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000); *see also United States v. Davis*, 94 F.3d 1465, 1467-68 (10th Cir.1996) (In determining whether a seizure comports with the Fourth Amendment, courts have identified three categories of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment ; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause).

The City contends the APD officer's actions in this case were justified as an investigative detention.[3] Unfortunately, there are no facts supporting the assertion that the officer was investigating a crime. The undisputed evidence is that (1) the officer was called in an effort to get him to the scene where Plaintiff had been detained by Thompson, because Thompson wanted assistance in issuing a CT notice to Plaintiff; (2) the officer told Thompson to bring Plaintiff to the Substation, where the officer obtained identification from Plaintiff; (3) the purpose of obtaining the identification was to allow Thompson to prepare a CT notice warning Plaintiff that he would be committing a crime if he returned to the Mall in the future; and (4) no one, neither Thompson nor the APD officer, ever indicated that criminal charges might be filed as a result of the incident that day, or that a possible crime was being investigated. In other words, the only evidence before the Court is that the APD officer instructed Thompson to detain Plaintiff and transport him to the Substation,

---

[3]The City discusses only the detention of Plaintiff and his friend at the Substation, ignoring the undisputed facts concerning the officer's role in having Plaintiff transported to the Substation in the first place.

4

not for purposes of investigating any crime, but in order to facilitate Thompson's desire to issue a CT notice to Plaintiff.[4]

Rather than being a detention in furtherance of the investigation of a current crime, the detention of Plaintiff was instead an effort to make it easier for the Mall and APD to enforce the criminal trespass statute *in the future*. Nothing in the Fourth Amendment or in Fourth Amendment jurisprudence authorized the APD officer to detain Plaintiff, in handcuffs, while obtaining information that was not relevant to any current offense but was relevant only to a potential future offense. *See generally Dunaway v. New York*, 442 U.S. 200 (1979) (transporting defendant to the police station was tantamount to an arrest, and had to be supported by probable cause); *U.S. v. Shareef*, 100 F.3d 1491, 1507 (10th Cir. 1996) (continuing to hold suspects in handcuffs, after ascertaining the suspects had no weapons and were not suspected of crime, constituted unconstitutional arrest; also , transportation of suspect to police station had to be supported by probable cause that a crime had been committed). Summary judgment will therefore be granted to Plaintiff on the issue of the legality of the APD officer's role in Plaintiff's detention.

**ORDER**

Based on the foregoing opinion, Plaintiff's motion for partial summary judgment as to the legality of Plaintiff's detention (Doc. 254) is hereby GRANTED.

---

[4]Thompson testified that this type of procedure, in which the security guards brought would-be CT notice recipients to the Substation rather than having the officer come to the scene, was a fairly common occurrence when the APD officers were busy. The Court notes that at this time no opinion need be rendered as to whether it would be a constitutional practice for APD officers to cooperate in the CT process by having private security guards detain individuals at the scene, waiting for APD officers to arrive so the CT notice can be issued. It does appear, however, that the City would need to come up with more of a justification for such a procedure than has yet been presented to the Court.

Dated this 22th day of April, 2002.

/s/ Bruce D. Black
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:
**For Plaintiff**:
John W. Boyd
Philip B. Davis

**For Defendant City of Albuquerque**:
Kathryn Levy