IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

JACOB LARRAGOITE,

        Plaintiff,

v.                                                                                               No. CIV 98-1545 BB/LFG

CITY OF ALBUQUERQUE, a
Municipal Corporation and political
subdivision of the State of New Mexico,

        Defendant.

## MEMORANDUM OPINION

**THIS MATTER** is before the Court on Plaintiff's motion seeking injunctive relief. The Court having held an evidentiary hearing on June 20 and 21, 2002, and reviewed the briefs of counsel, finds ample evidentiary support for injunctive relief against Heitman Properties d/b/a Coronado Center ("the Mall"). However, since Plaintiff has settled with, and dismissed, that Defendant, the Court finds no equitable relief against the City of Albuquerque ("City") will remedy the apparently on-going problems with security at the Mall. Equitable relief against the City must therefore be DENIED. This opinion will constitute the Court's findings of fact and conclusions of law.

## Discussion

### I. Facts

The Albuquerque Police Department ("APD") has a policy providing it will come to private property at the behest of the owner to issue a "criminal trespass notice" ("CT") to someone to receive a notice of expulsion.[1] (Ex. 3.) The purpose of the notification is to facilitate the later prosecution of the person noticed, in the event that he or she does return. (Schultz Tr. at 105-06.) The notification remains in effect for ninety days. (Ex. 3; Schultz Tr. at 119.) In order to serve this purpose, the notification procedure requires the person to be expelled, the owner's representative, and the responding police officer be at the premises, at the same time. (Schultz Tr. at 120.) Thus, the person subject to a CT must either voluntarily stay at the location for as long as is necessary for APD to arrive, or the owner's representative must hold him or her by force or threat of force. (*Ibid*. at 126-27.)

This Court has already determined that the arrest giving rise to this litigation was unlawful. *See* Memorandum Opinion filed April 22, 2002, at 5. The Plaintiff has since settled with the Mall and dismissed Heitman Properties d/b/a Coronado Center from the case. At trial there was evidence that demonstrates that the settlement agreement

---

[1] APD's manual states: "As a tool to assist in the documentation, prosecution, and conviction of subjects who commit Criminal Trespass, a Criminal Trespass Notification form has been devised. This form is designed to be used at businesses (for shoplifting, disturbances, etc.) and residences, as a way to formally notify a subject that he/she has been denied consent to enter or remain on the property of another. The notice is good for 90 days." *See* Ex. 3.

between Larragoite and the private defendants has had little impact on the Mall defendants' practices relating to unlawful "CT" arrests.

A former Mall security guard, Carmen Cornejo, testified that Mall visitors, particularly young Hispanic Mall visitors (Cornejo Tr. at 77), were often given CT notices for "walking in groups," back-talking" to security guards, refusing to leave after violating the dress code. (*Ibid.* at 74-75.) The visitors to be "CT'd" would be brought to the Mall's security booth, usually in handcuffs, and would await the police. (*Ibid.* at 75.) Cornejo's testimony was that the SST Mall security office contains about ten linear feet of files containing photographs and information on the persons who had been CT'd. (*Ibid.* at 80.) Cornejo estimated that during her weekly shifts, which did not include weekends, there were approximately six to eight people put through the CT process. (*Ibid.* at 81.) In Cornejo's observation, the majority were held in handcuffs while at the security booth, and the majority were to be CT'd for Mall rules violations, not for criminal conduct. (*Ibid.* at 93.) Cornejo, who worked as an SST dispatcher, would tell APD that the Mall needed an officer to issue a CT notice. (*Ibid.* at 75-76.) Cornejo also testified that all the APD officer did when he arrived was "what we called him to do and that was to give a criminal trespassing [notice]." (*Ibid.* at 78.)

Sergeant Elizabeth Baland of the APD testified that from 1988-2000 she was assigned to a beat which included the Mall. She testified she never received a call to come to the Mall solely to issue a CT notice. (Baland Tr. at 120.) Normally, she

3

received the dispatch to the Mall for another matter such as a fight or shoplifting but a CT notice would also often follow. (*Ibid.* at 120-1.) She testified she never checked with Mall security, SST Security Services, as "their security booth had nothing to do with my dispatch center." (*Ibid.* at 122.) Rather, Sergeant Baland said she would approach the scene as an APD officer and ask questions in an attempt to determine what was happening and who was involved. Sergeant Baland testified once she arrived, she was in charge and she would decide who should be handcuffed or released. (*Ibid.* at 123, *see also* 77-8.) She said, "[E]very call is different, every issue is different. Every time is different." (*Ibid.* at 126.) She testified as an APD officer if she did not feel a CT notice was warranted, she would not issue it. (*Ibid.* at 135; *see also* Schultz Tr. at 115, 130.) Sergeant Baland also provided at least one specific example of releasing and refusing to issue a CT to a citizen SST was holding for shoplifting. (Baland Tr. at 128.) Sergeant Baland testified in her experience CT notices were issued most frequently when a patron refused to leave a business, often a bar. (*Ibid.* at 129, 131-2.)

II. <u>*Legal Requirement for Injunctive Relief*</u>

In a proper factual setting, law enforcement officers may be enjoined from continuing to commit illegal acts. *Illinois Migrant Council v. Pilliod*, 540 F.2d 1062 (7th Cir. 1976). However, the movant must satisfy each of the elements necessary for injunctive relief before such extraordinary relief is appropriate. *Id.; see also Goldammer v. Fay*, 326 F.2d 268 (10th. Cir. 1964); *Robbins v. Budke*, 739 F. Supp. 1479 (D.N.M.

4

1990). Before injunctive relief can issue movant must prove (1) he will suffer irreparable injury if no relief issues; (2) he lacks legal remedies adequate to protect his interest; and (3) the equity of the situation favors movant over the interests of either the defendant or the public. *Mitel, Inc. v. Iqtel*, 124 F.3d 1366 (10th. Cir. 1997).

**III.** *Irreparable Injury*

As to the first element, irreparable injury,[2] the evidence is mixed as to what will happen if Plaintiff appears at the Mall. Mr. Martin, Mall security director, testified that even though a CT was good only for ninety days (Plaintiff's having thus expired years ago), it is likely the Mall will identify him as a "trespasser." (Martin Tr. at 40-41.) This might be enough to serve as a basis for an injunction against the owners of the Mall. Yet, Plaintiff has settled with the Mall and its security and failed to request he be allowed to shop there without further harassment from Mall employees.

To find sufficient irreparable injury to issue a permanent injunction against the City, this Court would have to find a past pattern of unlawful arrests for CT violations by APD which is likely to repeat itself. The record would not support such a conclusion. Indeed, Deputy Chief Schultz testified not only that "Mr. Larragoite's case was an anomaly" (Schultz Tr. at 146), but that standard operating procedures contained in the official manual "talk about the officers' duty to do an investigation when they are

---

[2] The parties also argue this element in the context of Plaintiff's standing and this discussion applies equally to that issue.

summoned to a particular incident or a location." (*Ibid* at 115.) This testimony, along with the expiration of the CT on Plaintiff make it unlikely Plaintiff would be subject to any action by APD which would subject him to irreparable injury. *United States ex rel. Zevin v. Cahn*, 282 F. Supp. 275 (E.D.N.Y. 1968).

IV.   *Adequacy of Legal Remedy*

In order to prevail, Plaintiff must carry his burden to prove he lacks an adequate legal remedy. Again, the testimony indicates he may be able to carry this burden with regard to the Mall, but Plaintiff introduced little or no relevant evidence directed to APD. Plaintiff seeks no monetary damage in the present case from the City, but if he were subjected to illegal or unconstitutional actions in the future, he would certainly have such a legal remedy under 42 U.S.C. § 1983. *See Lusby v. T.G.&Y. Stores*, 749 F.2d 1423 (10th. Cir. 1984), *cert. denied*, 474 U.S. 805 (1985); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir. 1985); *Bang v. Utopia Restaurant*, 923 F. Supp. 46 (S.D.N.Y. 1996); *Barton Protective Servs., Inc. v. Faber*, 745 So. 2d 968 (Fla. App. 1999)

V.   <u>*Equities*</u>

While the record supports Plaintiff's claim, he was subjected to inappropriate and illegal conduct at the time of his arrest. Most of this conduct, however, clearly was initiated by the Mall security officers. Nonetheless, there is evidence that even after he arrived at the Mall substation, the APD officer did nothing to remove Plaintiff

6

**Larragoite's handcuffs even though he had no basis to believe a crime of any type had been committed.**

**According to Cornejo, SST Security often left detainees in handcuffs for substantial periods (*i.e.*, hours) awaiting the issuance of a CT notice by APD. Both Chief Deputy Schultz and Sergeant Baland testified in their experience there is usually some other type of crime that actually precipitates the CT call and the officer must therefore investigate as to why the business patron is being held and/or CT'd. (Schultz Tr. at 125-32; Baland Tr. at 120-1). Both Schultz and Sergeant Baland testified that based on their experience, APD's involvement with Plaintiff Larragoite was an anomaly. (Schultz Tr. at 46; Baland Tr. at 121-26).**

**It is therefore impossible to fashion global injunctive relief which would restrain the rare excess found in Plaintiff's case but allow APD to carry on necessary investigative duties when summoned by private business. Obviously, APD should not condone holding suspects once it is determined there is no probable cause, but there was no evidence this is a frequently occurring practice which necessitates injunctive relief. Indeed, even attempting to evaluate future situations limited to Plaintiff's involvement at the Mall, APD must be allowed to determine if reasonable suspicion or probable cause exists for further action.[3] Injunctive relief to prevent future illegal acts by the police**

---

[3] Mr. Larragoite's recent drug conviction indicates the danger of prohibiting police questioning of a given individual in any context.

requires extreme circumstances which can be remedied only by an injunction which will not interfere with legitimate police work. *Cf. MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978 (10th. Cir. 1992) (no showing of extreme circumstances sufficient to enjoin future legal filings). The evidence does not support the issuance of such an injunction against APD.

*[signature]*
**BRUCE D. BLACK**
**United States District Judge**

**For Plaintiff:**

> John W. Boyd, FREEDMAN BOYD DANIELS HOLLANDER GOLDBERG & CLINE, Albuquerque, NM
> Philip B. Davis, ACLU of New Mexico, Albuquerque, NM

**For Defendant:**

> Kathryn Levy, Assistant City Attorney, CITY OF ALBUQUERQUE, Albuquerque, NM